IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REALTY INTERNATIONAL
ASSOCIATES, INC.,

         Plaintiff,

vs.                                                                                  CIVIL NO.  12-116 MV/LFG

CAPITAL FUND SECURITIES,

         Defendant.

## ORDER DIRECTING THAT GEORGE McKEON'S DEPOSITION IN IRELAND PROCEED

THIS MATTER came before the Court at a Fed. R. Civ. P. 16 telephonic conference conducted on August 27, 2013.  Counsel for both parties were present and argued their positions.

### Summary of Claims

Plaintiff Realty International Associates, Inc. ("Realty) filed suit against Capital Fund Securities ("CFS"), alleging it was damaged in an amount in excess of $270,000, plus interest and attorney fees and costs.  It argues that mortgages in the amount of $1,080,000 should have been refinanced, as the plain language and intent of an agreement regarding ownership, participation and distribution from promissory notes ("the Agreement") were to maximize amounts which could be refinanced so distributions could be made to note owners.  Realty further asserts that 75% of the note owners wanted to refinance the existing mortgages, and that CFS wrongfully refused to agree, thereby preventing the refinance and payment of equity to Realty.

CFS states that it was the sole and only owner of the financial instruments and that it chose not to increase the principal balance of the obligations in the sound exercise of its business judgment.  CFS denies breaching any contract or duty to Realty and denies that the Agreement

required refinancing. CFS contends that it fully discharged its duties and obligations under the Agreement, that the refinancing sought by Realty required consent and participation of the owners of property as a condition precedent, and that the owners declined consent. CFS also asserts that a June 28, 2004 letter agreement constitutes a waiver of any of Realty's rights to demand refinancing and that it is estopped from pursuing the claim. [Doc. 12, Joint Status Report, at 1-3.]

It is undisputed that George McKeon ("McKeon") is CFS's principal and Chief Operating Officer, and that he resides in Australia. [Doc. 25, at 2; Doc. 28, at 1.] In motion practice, CFS counsel described McKeon as the "originally appointed director for CFS and [] the chief authorized signatory." [Doc. 34, at 2.]

### **Procedural Background**

Due to health issues of Realty's party representative, the Court vacated the July 12, 2012 settlement conference. [Doc. 21.] According to minutes taken during a telephonic conference conducted August 16, 2012, the parties stated that they hoped to take McKeon's deposition in New Mexico whenever he came for the rescheduled settlement conference. [Doc. 25.]

Subsequently, the parties filed a Joint Motion to Extend Case Management Deadlines for five months [Doc. 26]. CFS attorney, Alex Walker, represented to the Court that McKeon suffered a stroke, and the reason for the long stay was to allow him to recover. Counsel stated that McKeon's daughter, who was a director of CFS, planned to "get up to speed" on the case, and would be available for a deposition. It was anticipated that with McKeon's stroke, his daughter also would be able to provide discoverable evidence. However, McKeon's daughter was kidnaped, sexual assaulted and murdered. At the time of a status conference on October 3, 2012, Mr. Walker did not know the status of McKeon's physical or emotional health, and did not know if there was any other corporate officer who could "take the reins" if McKeon was unable to recover from his stroke so as

2

to handle matters. [Doc. 28, at 2].

Based on this information, the Court granted the joint request to stay case management deadlines and explored with counsel what would occur if McKeon did not recover sufficiently to return to an active lifestyle. Mr. Walker represented that another child, McKeon's son, would be asked to step into the role of officer and director, but, at the time, there was no other individual who could provide testimony on behalf of CFS. Given the circumstances relating to McKeon's health and his daughter's disappearance and death, the Court granted a stay until March 4, 2013 [Doc. 29].

On March 5, 2013, at the expiration of the five month stay, the Court conducted a Rule 16 status conference. Mr. Walker informed the Court that McKeon was recovering from the strokes but that "the bigger issue" was his mental health related to his daughter's violent death. [Doc. 31.] Defense counsel also advised the Court that he received an unsolicited letter from a medical health professional in Australia. The letter simply stated that it would not be in McKeon's physical or mental best interests to proceed with this litigation.

At the March 5, 2013 conference, Mr. Walker, acknowledged that the letter did not discuss Mr. McKeon's competency, but noted that the criminal proceedings for the accused murderer were pending in Australia, that criminal trial would be emotionally difficult, and that the trial would not likely occur until the summer of 2013. Mr. Walker requested a stay until after conclusion of the criminal trial. [Doc. 31, at 2]. The Court sought clarification.

> COURT: Understands the request if there are issues about physical capability. But, the doctor's letter does not state if Mr. McKeon has reached a state of recuperation to the point where he can work.
>
> * * *
>
> Will need this type of information. If he [Mr. McKeon] is participating in other real estate transactions and projects, or work

3

> with others, or if he is maintaining a corporation and involved in day-to-day activities, this gravitates against an additional stay. Clearly, the emotional turmoil concerning the criminal matter is significant but Court is not certain that the extreme emotional turmoil warrants an additional significant stay of this litigation. The Court simply does not have sufficient information to make this decision. The Court is more concerned with his physical capabilities and a determination of what he [Mr. McKeon] is doing now with respect to operation of business. Cannot evaluate a request for such an extraordinarily long stay without additional specific information.

[Doc. 31, at 2-3].

The Court requested more specific information or an evaluation as to McKeon's health. "If he is impaired and cannot participate, that is one thing. If it is his preference not to participate at this time, that is something else." [Doc. 31, at 5]. The Court noted it was willing to grant a reasonable accommodation to McKeon but not willing to accept the letter Mr. Walker discussed during the telephonic conference call, as the letter said very little. It did not state, for example, that McKeon was not competent or medically incapable of proceeding.

Mr. Walker argued that another temporary stay was reasonable and that the case should be continued "until the murder trial has occurred." [Id.]. The Court stated:

> Will not schedule matters that conflict with criminal proceedings in Australia. The trial in the criminal matter is set possibly for this summer, and most likely, such a trial would last a week or two. But, if Mr. McKeon is otherwise participating in business matters, the Court is not willing to continue this stay. Needs more information, for example, if Mr. McKeon is in an income producing occupation. If not, how is he obtaining money to exist? Would need this type of information. Does not have a concern in granting additional time if Mr. McKeon demonstrates through medical reports or evidence that there is a bona fide physical reason why he cannot participate in this litigation. The Court clarifies to Mr. Walker that it will not set matters in this case that conflict with the Australia criminal case. However, the current information does not justify parking this case for a year or more.

[Id., at 6].

4

The Court imposed the burden on Mr. Walker to obtain some type of psychiatric evaluation as to McKeon's ability to proceed or not in this litigation. A simple statement that "litigation is not in his best interests" was insufficient. [Id.] The Court stated it needed to have information or an affidavit concerning what McKeon can do with respect to ongoing business activities in Australia, but agreed to stay proceedings for a short period of time. The Court gave CFS an additional forty-five days to file a motion to continue the stay. [Doc. 32.]

In response to the Court's order, CFS filed a motion to continue the stay and updated the Court as to the murder trial, stating that it was set for September 30, 2013. However, in April 2013, the accused murderer changed his plea to guilty. Attached, as an exhibit, was an ABC News report, dated April 5, 2013, stating that the suspect had entered a plea of guilty [Doc. 34-2].

On May 31, 2013, the Court entered an Order Denying Motion to Continue Stay [Doc.38]. The Court's recitation of history noted the most recent 45-day stay that expired on April 19, 2013, and that the Court previously informed counsel it would not continue the stay unless defense counsel supplied medical records and an affidavit that clearly demonstrated McKeon's inability to engage in business activities, along with evidence of a physical or mental impairment that prevented McKeon from participating in litigation. [Id., at 2].

CFS sought to continue a stay, asking the Court not to set a scheduling conference until July 2013 [Doc. 38, at 2] and submitted a report by McKeon's psychologist, dated March 2013. That report opined that, based on an evaluation of McKeon, he "should avoid all major stressors until after the conclusion of the murder trial." [Id.] Nothing in the report spoke to the fact that the murder trial would no longer proceed, thereby negating the original reason for seeking an additional stay. [Id.] After considering the parties' positions, the Court found no basis to continue the stay. While sympathetic with McKeon's personal tragedy and the impact of his daughter's death on McKeon,

5

there was no longer a criminal trial scheduled that would place stress on him as he originally asserted. In other words, the only basis for the psychologist's recommendation was the additional stress of the murder trial that the guilty plea resolved. The Court denied the motion to continue the stay until the summer of 2013. [Id., at 3.]

Subsequent to the denial of the request for an additional stay, the Court entered an order resetting pretrial deadlines, establishing September 27, 2013 as the deadline for completion of discovery. [Doc. 39.] On July 25, 2013, the parties requested a telephonic Rule 16 conference as to Realty's "Emergency Motion to Determine the Location for the Taking of George McKeon's Deposition." [Doc. 40.] Realty wanted to take McKeon's deposition in the United States, but CFS filed a response stating that McKeon lives in Australia, that CFS is an Irish corporation, and that its principal place of business was in Dublin, Ireland. CFS opposed having McKeon come to the United States for a deposition. [Doc. 42, minutes.]

The Court noted the general rules governing depositions, including that the deposition should be taken at the party's place of business or residence. On more than one occasion, Mr. Walker apprised the Court that Dublin is CFS's principal place of business. [Docs. 6, 34 at 2, 41, and *see* 42.] "CFS is a closely held, Irish corporation, with three shareholders: George McKeon and his two children." [Doc. 34, at 2.] Accordingly, the Court prohibited taking the deposition in New Mexico as requested by Realty, and authorized the deposition to go forward in Dublin, pursuant to CFS's request. [Doc. 43.]

## **Present Dispute**

After the Court authorized McKeon's deposition to go forward in Dublin, Realty's counsel contacted Mr. Walker to obtain dates for the proposed deposition. Indeed, Realty's counsel provided suggested dates. Mr. Walker did not initially respond to the request for available dates for

McKeon's deposition in Ireland. [*See* 45, minutes.] Realty's counsel then sent follow-up emails, noting that there was no response from Mr. Walker, and further finding that one of the available dates he previously suggested was no longer available. Realty's counsel again requested agreement on a deposition date. Mr. Walker was to confirm availability, but failed to do so. Ultimately, Realty's counsel unilaterally set a deposition in Dublin.

At this point, Mr. Walker contacted Realty's counsel advising that he had been mistaken and that CFS's principal place of business had not been in Dublin since 2004. Instead, Mr. Walker stated that CFS's principal place of business was in Australia. Mr. Walker offered to provide Realty counsel with documentation to confirm CFS's principal place of business. But, when Realty counsel followed up by requesting the documentation that Mr. Walker did not provide, Mr. Walker responded that he did not know what kind of information Realty counsel needed. [Doc .45.]

Based on Mr. Walker's position during the telephonic conference, CFS now contends that the principal place of business is not Dublin; that McKeon is not medically clear to travel to Ireland; that the scheduled deposition was unilaterally set; and that it is set at an inconvenient time for Mr. Walker. CFS filed a Notice of Non-Appearance that McKeon will not appear at the September 12, 2013 deposition in Ireland. [Doc. 44.]

## **Analysis**

At the August 27, 2013 Rule 16 telephonic conference, the Court noted that CFS represented in its answer [Doc. 6, at ¶ 4] that it is an Irish corporation with its principal place of business in Dublin. CFS filed that answer on April 2, 2012. In subsequent motion practice and during status conferences, Mr. Walker reiterated that CFS's principal place of business was in Dublin. Based on those representations, the Court determined that Dublin is an appropriate place for the deposition.

CFS counsel now argues, however, that it was simply his mistake. He erroneously believed

7

that Dublin was the chief place of business. Yet, during the year and a half after filing its Answer, CFS made no effort to correct assertions about its principal place of business. Nor did CFS attempt to correct other representations previously made as to the location of CFS's principal place of business.

Moreover, CFS's previously asserted reasons for not wanting to participate in discovery, for example, the trial of McKeon's daughter's assailant, no longer exist. In addition, CFS did not provide convincing evidence that McKeon was medically, mentally or emotionally unable to participate in discovery or court proceedings, due to his stroke or physical limitations.

A deposition may not be unilaterally set by one party unless the opposing party refused to cooperate in providing proposed dates for depositions or otherwise failed to cooperate in the discovery process. This occurred here. Mr. Walker ultimately failed to cooperate in setting the deposition after agreeing to schedule it in Dublin. He did not respond to Realty's counsel's communications about setting the deposition. After months, if not years, of representing that Ireland is CFS's principal place of business, at the eleventh hour, CFS counsel states he was mistaken.

The Court advised counsel that one possibility would be that the parties agree to a video conference deposition, but that the Court could not require the parties to proceed by a video conference deposition. Instead, the parties and counsel would have to agree to that type of proceeding. Mr. Walker asserted that allowing the deposition to go forward, given the time differences, would mean that McKeon would have to participate in a 2:00 a.m. deposition. While this may be true given time differences, one party or the other will be inconvenienced. If the Court was to direct setting the deposition time so that counsel could participate only during business hours in New Mexico, the deposition in Ireland would then inconvenience the deponent and Realty's counsel

8

For the reasons stated above, the Court finds no justification for the Notice of Non-Appearance, and directs that McKeon's deposition, previously set for September 12, 2013 in Ireland, proceed as scheduled.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge