PIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REALTY INTERNATIONAL ASSOCIATES,

      Plaintiff,

                                     No. 1:12-cv-0116 RB/WPL

  v.

CAPITAL FUND SECURITIES, Limited, a
foreign corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Capital Fund Securities, Inc.'s Motion to Tax Costs and Motion for Attorneys' Fees and Costs. (Docs. 96 and 97.) Plaintiff Realty International Associates filed responses in opposition to these Motions. (Docs. 100 and 118.) Jurisdiction is based on diversity. *See* 28 U.S.C. § 1332. The Court will grant the Motions for the reasons set forth herein.

## I.    BACKGROUND

In 2003, Plaintiff Realty International Associates and Defendant Capital Fund Securities, and others, entered into an Agreement Regarding Ownership, Participation, and Distribution from Promissory Notes (the "2003 Agreement") to resolve a dispute regarding rights to distribution income from wraparound notes on apartment projects in Clovis, New Mexico. (Doc. 5.) The 2003 Agreement provides, in pertinent part, that: "In the event of any dispute over the enforcement and/or breach of any term of this AGREEMENT, the prevailing party thereto shall be entitled to

recover reasonable attorneys' fees and costs. Any dispute over the enforcement of the AGREEMENT shall be governed by New Mexico law . . . ."   (Doc. 5-1.)

In February 2012, Plaintiff Realty International Associates commenced this breach of contract action against Defendant Capital Fund Securities.   (Doc. 1.)   In its Amended Complaint, Plaintiff Realty International Associates alleged that Defendant Capital Fund Securities breached the 2003 Agreement: (1) "by causing its attorney to inform New Mexico Bank & Trust that Capital Fund Securities did not want to refinance the five identified mortgages for an amount in excess of the existing mortgages;" and (2) "because Capital Fund Securities prevented refinancing of the existing mortgages to be undertaken for the benefit of the holders of the notes, which included Realty International Associates."   (Doc. 5.)

On September 24, 2014, Judge Vazquez granted Defendant Capital Fund Securities' Motion for Summary Judgment on the ground that Plaintiff Realty International Associates' theories for its breach of contract claim failed as a matter of law on the undisputed facts.   (Doc. 93.)

## II.   CASE HISTORY

Defendant Capital Fund Securities, a closely held corporation, was formed in Ireland and had three shareholders: George McKeon and his two children.   (Doc. 34.)   George McKeon and his children have lived in Australia since 2004.   (*Id.*)   In July 2011, George McKeon suffered a stroke.   (Doc. 34.)   Subsequently, George McKeon's daughter, Gillian Meagher, was appointed as a director of Defendant Capital Fund Securities for the express purpose of taking over operational control.   (*Id.*)

Plaintiff Realty International Associates filed this action on February 6, 2012.   (Doc. 1.) George McKeon's son, Michael McKeon, was appointed as a director of Defendant Capital Fund

Securities in July 2012, for the sole purpose of attending this Court's mandatory settlement conference, after George McKeon suffered a second stroke.  (*Id*.)  However, the settlement conference was cancelled so that Hugh Pike, the principal of Plaintiff Realty International Associates, could recover from elective knee surgery.  (*Id*.; Doc. 36.)

In September 2012, Gillian Meagher was abducted and murdered in Melbourne, Australia. (Doc. 34.)  On October 3, 2012, United States Magistrate Judge Lorenzo F. Garcia stayed this matter until March 4, 2013.  (Doc. 29.)  At that time, counsel for Defendant Capital Fund Securities did not know the status of George McKeon's physical or emotional health and did not know who would "take the reins if [George] McKeon is unable to recover so as to handle this matter."  (Doc. 28.)

On March 5, 2013, Judge Garcia held a status conference and Defendant Capital Fund Securities requested continuation of the stay.  (Doc. 31.)  Judge Garcia granted a 45-day extension of the stay and ordered Defendant Capital Fund Securities to submit a motion supported by medical records that "clearly demonstrate an inability to engage in business activities, and a physical or mental impairment that prevents [George] McKeon from participating in litigation." (Doc. 32.)  Defendant Capital Fund Securities filed the motion with affidavits indicating that George McKeon was suffering severe post-traumatic stress, depression, and anxiety and he was subject to additional stress from the criminal trial of his daughter's assailant.  (Doc. 34.)  Plaintiff Realty International Associates opposed the motion for a continuation of the stay.  (Doc. 35.)  On May 31, 2013, Judge Garcia denied the motion for continuation of the stay.  (Doc. 38.)

On July 23, 2013, Plaintiff Realty International Associates filed an Emergency Motion to Determine the Location for the Taking of George McKeon's Deposition.  (Doc. 40.)  Plaintiff Realty International Associates wanted to take the deposition of George McKeon in Albuquerque,

New Mexico or in Dublin, Ireland.  (*Id.*)  Defendant Capital Fund Securities had alleged in its Answer that its principal place of business was Dublin.  (*Id.*)  Defendant Capital Fund Securities requested that the deposition be taken in Perth, Australia where George McKeon resides, be taken by telephone or video conference, or be taken in Dublin.  (Doc. 41.)  Judge Garcia ordered that the deposition be taken in Dublin.  (Doc. 43.)

Defendant Capital Fund Securities filed a Notice of Non-Appearance for George McKeon. (Doc. 44.)  At an August 27, 2013 status conference, counsel for Defendant Capital Fund Securities stated that he had mistakenly alleged that the principal place of business for Defendant Capital Fund Securities was Dublin.  (Doc. 45.)  In fact, since 2004 the principal place of business for Defendant Capital Fund Securities has been Australia.  (*Id.*)  Defense counsel informed Plaintiff Realty International Associates and Judge Garcia that George McKeon was unable to travel from Australia to Ireland due to his physical impairments.  (*Id.*) Pursuant to his doctor's orders, George McKeon had not left Australia since his second stroke in 2012.  (*Id.*; Doc. 58.)  Judge Garcia ordered that the deposition would proceed in Dublin unless the parties agreed to hold the deposition by video conference.  (Doc. 46.)

Defendant Capital Fund Securities filed a Motion to Amend the Answer to reflect that its principal place of business is Australia.  (Docs. 49.)  Defendant Capital Fund Securities also filed Objections to Judge Garcia's Order requiring that the deposition of George McKeon take place in Ireland.  (Doc. 51.)  Judge Vazquez referred the Motion to Amend the Answer to Judge Garcia. (Doc. 57.)  Judge Garcia denied the Motion to Amend the Answer and ordered "[George] McKeon is required to submit to a deposition in Dublin, Ireland[.]"  (Doc. 59.)  Defendant Capital Fund Securities filed a Notice of Non-Appearance stating that George McKeon had suffered a third stroke in November 2013.  (Doc. 62.)  Defendant Capital Fund Securities

retained Andrew McGuiness, an attorney in Australia, to provide legal advice and to obtain protected medical records for litigation over the location of the deposition of George McKeon. (Doc. 97-1.)

Defendant Capital Fund Securities offered alternative means for Plaintiff Realty International Associates to obtain the deposition of George McKeon.   For instance, on November 19, 2013, Defendant Capital Fund Securities offered to pay the full cost of airfare for counsel for Plaintiff Realty International Associates to travel to Australia and to compensate counsel for any additional travel time incurred by a trip to Australia versus a trip to Ireland.   (Doc 67-3.)   On December 6, 2013, Defendant Capital Fund Securities suggested that the deposition be taken via video conference due to George McKeon's health concerns.   (Doc. 72-8.)   In another suggestion, counsel for Defendant Capital Fund Securities asked if Plaintiff Realty International Associates would consider taking a Rule 30(b)(6) deposition of a witness other than George McKeon in Ireland.   (*Id.*)

On December 13, 2013, the case was reassigned to United States Magistrate Judge William P. Lynch.   (Doc. 63.)   On December 16, 2013, Plaintiff Realty International Associates filed a Motion to Strike Answer and enter a default judgment against Defendant Capital Fund Securities because George McKeon violated Court orders by failing to agree to dates for his deposition in Ireland.   (Doc. 65.)

On December 17, 2013, counsel for Defendant Capital Fund Securities contacted counsel for Plaintiff Realty International Associates regarding George McKeon's worsening medical condition and observed that it would be in the parties' best interests to move forward with a video deposition before George McKeon's health deteriorated any further.   (Doc. 72-11.)

On December 22, 2013, Judge Lynch issued an order requiring medical verification of

George McKeon's medical condition.  (Doc. 66.)  On December 23, 2013, Defendant Capital Fund Securities filed a Sealed Submission in Response to Amended Order Directing Medical Verification supported by a letter from George McKeon's treating physician and an affidavit from his treating neurologist.  (Doc. 67.)   Therein, Defendant Capital Fund Securities explained that diagnostic testing indicated that George McKeon suffered from bleeding in his brain.  (*Id.*) More specifically, an MRI showed a left putamen stroke, as well as amyloidangiopathy, which markedly increased George McKeon's risk of a massive hemorrhagic stroke.   (Doc. 67-1.)

In a letter, Dr. Lenn Harris, George McKeon's treating general practitioner, emphasized that "George McKeon *must not fly under any circumstances*."  (*Id.*)  (emphasis in original).   In an affidavit, Dr. Anthony Alvaro, George McKeon's treating neurologist, warned that "there would be unacceptable risk with overseas travel of a further [stroke]. If in fact a stroke were to occur during travel, it is likely Mr. McKeon's care would be compromised potentially resulting in increased disability or death."   (Doc. 67-1.)

On January 22, 2014, Judge Lynch ordered that Defendant Capital Fund Securities forward George McKeon's medical records to Dr. Don F. Seelinger, a court-appointed neurologist, "for consideration of whether George McKeon is or should be medically cleared to travel from Perth, Western Australia to Dublin, Ireland for purposes of a deposition."  (Doc. 75.)  Judge Lynch ordered that Plaintiff Realty International Associates pay the cost of Dr. Seelinger's services. (*Id.*)

On January 22, 2014, Defendant Capital Fund Securities filed a Motion for Summary Judgment, seeking judgment in its favor as to all claims asserted in the Amended Complaint. (Doc. 76.)   In its Motion for Summary Judgment, Defendant Capital Fund Securities argued that both of Plaintiff Realty International Associates' theories for its breach of contract claim failed as a matter of law on the undisputed facts.   (*Id.*)

6

On February 2, 2014, Plaintiff Realty International Associates filed a motion, pursuant to Federal Rule of Civil Procedure 56(d), representing that it was unable to respond to Defendant Capital Fund Securities' Motion for Summary Judgment because it had been "unable to take the deposition of George McKeon, the most knowledgeable person of [Defendant Capital Fund Securities], and a percipient witness to the allegations of the Amended Complaint."  (Doc. 78.) In its response, Defendant Capital Fund Securities reiterated its offer to pay for Plaintiff Realty International Associates' counsel to fly to Australia to conduct the deposition of George McKeon. (*Id.*)

On March 10, 2014, Dr. Seelinger rendered his opinion.  (Doc. 81.)  Dr. Seelinger observed that "there are known risks with long distance, cross-meridian air travel."  (*Id.*)  Dr. Seelinger explained the " most common complication is deep vein thrombosis in the legs, which is frequently referred to as 'Economy Class Syndrome' because of cramped conditions during flight."  (*Id.*)  Dr. Seelinger concluded that George McKeon had "no medical contraindication for flight."  (*Id.*)

On April 14, 2014, Judge Lynch ordered that the deposition proceed in Dublin unless the parties agreed otherwise.  (Doc. 86.)  Plaintiff Realty International Associates noticed George McKeon's deposition for May 30, 2014, in Dublin.  (Doc. 96-1.)  Defendant Capital Fund Securities crossed-noticed the deposition for videotaping and use at trial.  (Doc. 119-2.)  George McKeon flew to Dublin at a cost of $13,613.64 in Australia dollars.  (Doc. 119.)  Due to George McKeon's medical condition, Michael McKeon (George McKeon's son and a director of Defendant Capital Fund Securities) accompanied George McKeon on the nineteen-hour trip. (*Id.*)  The airfare for Michael McKeon cost $2,673.34 in Australian dollars.  (*Id.*)  The deposition of George McKeon was held on May 30, 2014, in Dublin, Ireland.  (Doc. 96.)

Counsel for Defendant Capital Fund Securities appeared for the deposition by video conference and the deposition was videotaped for use at trial.   (*Id.*)

On August 13, 2014, Plaintiff Realty International Associates filed its response to Defendant Capital Fund Securities' Motion for Summary Judgment.   (Doc. 90.)   Plaintiff Realty International Associates did not cite to the deposition of George McKeon in its response to Defendant Capital Fund Securities.   (*Id.*)

On September 24, 2014, Judge Vazquez granted Defendant Capital Fund Securities' Motion for Summary Judgment on the ground that both of Plaintiff Realty International Associates' theories for its breach of contract claim failed as a matter of law on the undisputed facts.   (Doc. 93.)   On the same day, Judge Vazquez denied Plaintiff Realty International Associates' Motion to Strike Answer.   (Doc. 95.)   On October 23, 2014, Plaintiff Realty International Associates filed a notice of appeal.   (Doc. 98.)

On October 16, 2014, Defendant Capital Fund Securities filed a Motion to Tax Costs, seeking costs as set forth in an accompanying cost bill.   (Doc. 96.)   Also on October 16, 2014, Defendant Capital Fund Securities filed a Rule 54 Motion for Attorneys' Fees and Costs.   (Doc. 97.)   While Defendant Capital Fund Securities filed the Motion to Tax Costs with no filing restrictions, for unexplained reasons, Defendant Capital Fund Securities filed the Motion for Fees for Attorneys' Fees and Costs with a restriction for "case participants" only.   (*Id*.)

On October 30, 2014, Plaintiff Realty International Associates filed an Objection to Defendant's Motion to Tax Costs.   (Doc. 100.)   Plaintiff Realty International Associates did not at that time, however, file any response to Defendant Capital Fund Securities' Motion for Attorneys' Fees and Costs.   On December 19, 2014, Defendant Capital Fund Securities filed a Notice of Completion of Briefing on its Motion for Attorneys' Fees and Costs.   (Doc. 105.)   On

December 22, 2014, Plaintiff Realty International Associates filed an "Objection" to the Notice of Briefing, arguing that no Motion for Attorneys' Fees and Costs had been served on Plaintiff Realty International Associates, and that the time for filing such a motion had expired on October 25, 2014.  (Doc. 106.)  Plaintiff Realty International Associates neither requested an extension of time to respond nor requested a copy of Defendant Capital Fund Securities' Motion for Attorneys' Fees and Costs.

On January 9, 2015, Judge Vazquez issued an Order deciding both the Motion to Tax Costs and the Motion for Attorneys' Fees and Costs (the "Order").  (Doc. 109.)  Judge Vazquez noted that Plaintiff Realty International Associates failed to respond to the Motion for Attorneys' Fees and Costs, and determined that this failure to respond constituted its implied consent to grant the Motion for Attorneys' Fees and Costs.  (*Id.*)  The Order granted Defendant Capital Fund Securities' Motion for Attorneys' Fees and Costs in its entirety and denied the Motion to Tax Costs as duplicative and therefore moot.  (*Id.*)

On January 20, 2015, Plaintiff Realty International Associates filed a Motion for Reconsideration, asking Judge Vazquez to set aside its Order.  (Doc. 110.)  Defendant Capital Fund Securities opposed the Motion for Reconsideration.  (Doc. 111.)  On May 27, 2015, the matter was reassigned to the undersigned.  (Doc. 115.)  On June 15, 2015, the Court granted the Motion for Reconsideration and allowed the parties to file a response and reply to the Motion to Tax Costs and the Motion for Attorneys' Fees and Costs.  (Doc. 116.)  The parties have completed briefing and the Motion to Tax Costs and the Motion for Attorneys' Fees and Costs are ready for decision.  (Docs. 117, 118, and 119.)

### III.   LEGAL STANDARDS

The 2003 Agreement provides the prevailing party will be entitled to recover reasonable attorneys' fees and costs.   "In a diversity action, a party's right to attorney fees under a contract is determined by reference to state law."   *Rockwood Ins. Co. v. Clark Equip. Co.*, 713 F.2d 577, 579 (10th Cir. 1983).   New Mexico applies the American Rule regarding attorneys' fees, where, absent some reason to divert from the general rule, "the prevailing party . . . does not receive attorney fees."   *Key v. Chrysler Motors Co.*, 998 P.2d 575, 581 (N.M. Ct. App. 2000) (quoting *Schroeder v. Mem'l Med. Ctr.*, 945 P.2d 449, 451 (N.M. 1997)).   However, contracting parties may include a provision in their contract that, if one party sues the other, and that suit relates to the contract, the winner of the suit will be awarded the attorneys' fees and costs reasonably and necessarily incurred in bringing or defending the contract suit.   *See Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 142 P.3d 1, 8-9 (N.M. Ct. App. 2006) (affirming an award of attorneys' fees and costs under such a clause).   "The trial court may abuse its discretion if it does not award attorney fees contrary to a contractual provision entitling the prevailing party to reasonable attorney fees."   *See Hedicke v. Gunville*, 62 P.3d 1217, 1224 (N.M. Ct. App. 2002).   Thus, the prevailing party is entitled to reasonable attorneys' fees and costs under the 2003 Agreement.

Additionally, the prevailing party may receive costs under Rule 54 of the Federal Rules of Civil Procedure.   Specifically, Rule 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs other than attorneys' fees should be allowed to the prevailing party."   Fed. R. Civ. P. 54(d)(1).   The Tenth Circuit has stated "it is well established that Rule 54 creates a presumption that the district court will award costs to the prevailing party."   *Cantrell v. International Broth. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995)

The use of the word "should" in Rule 54(d)(1) gives courts discretion to award costs to prevailing parties. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997, 2001 (2012). However, costs awarded under Rule 54(d)(1) are limited to those which are specified either by statute or by contract. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439, 445 (1987). Title 28 U.S.C. § 1920 provides for the taxation of the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; (6) and compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. *See* 28 U.S.C. § 1920.

## IV.    DISCUSSION

### A.    Defendant Capital Fund Securities is the prevailing party.

The 2003 Agreement specifies that the "prevailing party" is entitled to reasonable attorneys' fees and costs.  The "prevailing party" has been described as "the party who wins the lawsuit, that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment," *Dunleavy v. Miller*, 862 P.2d 1212, 1219 (N.M. 1993), and the party who "successfully avoided an adverse judgment on every claim." *Hedicke*, 62 P.3d at 1224.  Notably, the prevailing party is the party who wins on the merits or on the main issue of the case. *See Fort Knox Self Storage, Inc.*, 142 P.3d at 9.  "A judgment for defendant on its motion for summary judgment . . . is one on which it is the prevailing party and entitled to costs unless the trial court can articulate a justification for denial." *Marchman v. NCNB Texas Bank*, 898 P.2d 709, 730 (N.M. 1995) (citation omitted).

Judge Vazquez ruled that Defendant Capital Fund Securities did not breach the 2003 Agreement and both of Plaintiff Realty International Associates' theories for its breach of contract claim failed as a matter of law on the undisputed facts.  (Doc. 93.)   In that Defendant Capital Fund Securities prevailed on summary judgment, it successfully avoided an adverse judgment on every claim and won on the merits and the main issues of the case.   For these reasons, Defendant Capital Fund Securities qualifies as the prevailing party.   Accordingly, Defendant Capital Fund Securities is entitled to recover reasonable attorneys' fees and costs under the 2003 Agreement and the Court may award costs under Rule 54(d)(1).

### B.     Reasonable attorneys' fees will be awarded.

Defendant Capital Fund Securities requests $87,389.88 in attorneys' fees.   Plaintiff Realty International Associates responds that the attorneys' fee award should be reduced by at least $13,602.00.   In determining the reasonableness of a fee award, a court should consider a variety of factors, including: (1) the time and effort required, considering the complexity of the issues and the skill required; (2) the customary fee in the area for similar services; (3) the results obtained and the amount of the controversy; (4) time limitations; and (5) the ability, experience, and reputation of the attorney performing the services.  *Thompson Drilling, Inc. v. Romig*, 736 P.2d 979, 983 (N.M. 1987).

The first factor weighs in favor of Defendant Capital Fund Securities.  Although the underlying legal issues in this case are not exceedingly complex, Plaintiff Realty International Associates' conduct concerning the deposition of George McKeon needlessly increased the attorney time expended.   Plaintiff Realty International Associates contends that Defendant Capital Fund Securities should not be reimbursed for attorney time expended in litigating this issue because the deposition was ordered to take place in Dublin.   Plaintiff Realty International

12

Associates ignores the fact that it insisted that George McKeon travel from Australia to Ireland for his deposition.   Plaintiff Realty International Associates could have agreed to hold the deposition in a more reasonable and cost effective manner, yet it refused to cooperate.   In light of George McKeon's precarious health condition, it was reasonable for Defendant Capital Fund Securities to litigate the issue of the location of his deposition.   As Defendant Capital Fund Securities prevailed on summary judgment and successfully avoided an adverse judgment on every claim, it is the prevailing party and entitled to an award of reasonable attorney fees for the time expended on the issue of the location of George McKeon's deposition, including the 10.9 hours expended by Mr. McGuiness.

In addition to litigating the deposition issue, the Modrall firm undertook a variety of legal actions including answering the amended complaint, preparing a joint status report, appearing for the Rule 16 conference, submitting Rule 26 initial disclosures, propounding and responding to written discovery, participating in six status conferences with the magistrate judges, preparing for and attending depositions, preparing for a settlement conference vacated at Plaintiff Realty International Associates' request, researching and drafting motions, obtaining medical verifications, and researching and drafting the summary judgment motion and briefs.   (Doc. 97-1.)   For this work and the work on the deposition location issue, the Modrall firm billed a total of 276.90 hours.   (*Id.*)   Plaintiff Realty International Associates objects to five hours expended on the refinancing of other mortgages and inquiries about cash flow payments.   (Doc. 118-1.)   As these five hours were arguably spent on matters unrelated to this litigation, the Court will exclude them. Given the circumstances, the Court finds that the 271.90 hours billed by the Modrall firm is reasonable.   Accordingly, the Court finds that the 10.9 hours billed by Mr. McGuiness and the 271.90 hours billed by the Modrall firm are reasonable.

The second factor under *Thompson Drilling* is the customary fee in the area for similar services.   Plaintiff Realty International Associates does not challenge the attorneys' rates.   The Modrall attorneys' rates range from $175 to $325 per hour and are supported by the affidavits of Alex C. Walker and Andrew G. Schultz.   (Doc. 97-3.)   The Court finds that the rates of the Modrall attorneys are reasonable given the Court's experience and the supporting affidavit.   Mr. McGuiness charged a rate of $440 per hour in Australian dollars, which equates to approximately $410 per hour in American dollars.   (Doc. 97-1.)   While this rate is not supported by an affidavit, Plaintiff Realty International Associates does not object to it.   In that Plaintiff Realty International Associates does not object to the rate charged by Mr. McGuiness, the Court will presume this rate to be the reasonable and customary fee for Western Australia.   As a result, the Court finds that the rates claimed by counsel are reasonable.

The remaining *Thompson Drilling* factors weigh in favor of Defendant Capital Fund Securities.   There were no specific time limitations.   Plaintiff Realty International Associates does not question the experience, reputation and ability of defense counsel.   The amount in controversy concerned approximately $1,000,000 and defense counsel obtained a favorable result. Multiplying the applicable rates with the reasonable hours of attorney time expended results in $73,093.50 in attorneys' fees for the Modrall firm and $4,469.00 in attorney's fees for Mr. McGuiness.   (Doc. 97-1.)   Accordingly, the Court will award a total of $77,562.50 in attorneys' fees to Defendant Capital Fund Securities.

###        C.        Reasonable costs will be awarded.

Defendant Capital Fund Securities requests $28,096.86 in costs.   Plaintiff Realty International Associates responds that costs should be limited to $2,892.18.   More specifically, Plaintiff Realty International Associates objects to costs for videotaping, video conferencing,

witness travel costs, and non-witness travel costs.   The 2003 Agreement provides that the prevailing party is entitled to recover reasonable costs. The Court finds that the reasonableness of the costs should be evaluated in light of the types of costs permitted by Rule 54(d)(1) and 28 U.S.C. § 1920.

The costs of the video recording and transcript of George McKeon's deposition are permissible costs.   Section 1920(2) provides for the taxation of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."   28 U.S.C. § 1920(2).   Notably, the Tenth Circuit has held that Section 1920(2) permits taxation of the costs of videotaped depositions.   *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997). Defendant Capital Fund Securities cross noticed George McKeon's deposition for videotaping for use at trial.   (Doc. 103-1.)   As a principal of Defendant Capital Fund Securities, George McKeon would have been called as a witness at trial.   George McKeon has a history of strokes and his treating physicians opined that he should not travel long distances by air.   Given Mr. McKeon's health and the long distance involved, it was reasonable for Defendant Capital Fund Securities to cross notice his deposition for videotaping for use at trial.   The video recording and stenographic transcript of the deposition of George McKeon were reasonably necessary.   Accordingly, the Court will award to Defendant Capital Fund Securities $5,853.11 for these costs.

Defendant Capital Fund Securities seeks $3,292.90 for video conference fees associated with defense counsel's appearance at George McKeon's deposition.   (Doc. 96-2.)   Plaintiff Realty International Associates objects to the costs for defense counsel to appear at George McKeon's deposition by video conference. "The costs of conducting a deposition by videoconference are analogous to [attorney] travel costs, which are not recoverable under 28 U.S.C. § 1920."   *Stanford v. Portfolio Recovery Assoc.*, 2013 WL 5476272 * 3 (E.D. Mich. Oct.

2, 2013).   *See also Mims v. Arrow Financial Servs.*, 900 F.Supp.2d 1336, 1339 (S.D. Fla. 2012).

The Court finds that the video conference fees associated with defense counsel's appearance at

George McKeon's deposition were neither reasonable nor authorized by Rule 54(d)(1).   Thus,

these costs will not be awarded.

      Defendant Capital Fund Securities requests reimbursement for George McKeon's round

trip first class airfare from Perth, Australia to Dublin, Ireland, which cost $13,614 in Australian

dollars.   (Doc. 96-2.)   The cost for economy class airfare on the same flight was $2,674 in

Australian dollars.   (*Id.*)   Title 28 U.S.C. § 1821 provides that a "witness who travels by common

carrier shall be paid for the actual expenses of travel on the basis of the means of transportation

reasonably utilized . . . . Such a witness shall utilize a common carrier at the most economical rate

reasonably available." 28 U.S.C. § 1821(c)(1).   Although Dr. Seelinger suggested that George

McKeon should move around during the flight, Dr. Seelinger did not state that George McKeon

needed to travel first class.   George McKeon was required to travel from Australia to Ireland for

his deposition and reimbursement of his travel expenses is authorized by Section 1821..

However, it was not reasonable for George McKeon to travel first class.   The Court will award

Defendant Capital Fund Securities the costs for the economy fare for the flight, which was

approximately $2,487.48 in U.S. dollars.

      Defendant Capital Fund Securities requests reimbursement for Michael McKeon's round

trip economy class airfare from Perth, Australia to Dublin, Ireland, which cost $2,674 in

Australian dollars.   Defendant Capital Fund Securities also requests reimbursement for defense

counsel's round trip airfare from Albuquerque, New Mexico to Dallas, Texas for the deposition of

John Autry, which cost $672.   It is well-established that travel costs for non-witnesses and

attorneys are not authorized by statute.   *See* 10 Charles A. Wright, Arthur R. Miller & Mary Kay

Kane § 2676, at 443.   The Court finds that payment for travel expenses for non-witnesses and attorneys is not reasonable under the 2003 Agreement.   As a result, the Court will not award these expenses as costs.

## V.    CONCLUSION

For the foregoing reasons, Defendant Capital Fund Securities will be awarded $77,562.50 in attorneys' fees and $8,340.59 in costs.

**THEREFORE,**

**IT IS ORDERED** that Defendant Capital Fund Securities, Inc.'s Motion to Tax Costs and Motion for Attorneys' Fees and Costs, (Docs. 96 and 97), are granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant Capital Fund Securities is awarded $77,562.50 in attorneys' fees and $8,340.59 in costs.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**